# CIVIL COVER SHEET

Case 2:05-cv-01695 Document 1 Filed 03/31/05 Page 1 of 48

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Joseph A. June, Sr., Linda June, Tara Richie, Joseph A. June, Jr., Kevin Richie, Jayden June, Alicia Vasquez, Eric Jones and Matt Santiago

## DEFENDANTS

Kevin J. Spano, Scott LePare, Fabian Martinez, Francis Donchez, William Dosedlo, John Doe Brazinski, John Doe Vasvari, John Doe Alestas, City of Bethlehem, Township of Bethlehem, et al

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Northampton
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Northampton
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES. USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME ADDRESS. AND TELEPHONE NUMBER)

John P. Karoly, Jr., Esquire
KAROLY LAW OFFICES, P.C.
1555 N. 18th St., Allentown, PA 18104

ATTORNEYS (IF KNOWN)

Not Known

## II. BASIS OF JURISDICTION (PLACE AN X IN BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

This is a civil rights under 1st, 4th, 5th, and 14th Amendmants and 42 U.S.C. Sections 1983, 1985, and 1988 for illegal search, seizure, arrest, and imprisonment.

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23

DEMAND $810,000.00   CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions): N/A

JUDGE _____   DOCKET NUMBER _____

DATE   March 31, 2005

SIGNATURE OF ATTORNEY OF RECORD   _(signature)_

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Joseph A. June, Sr., <u>et al</u>          :          CIVIL ACTION
                                           :
            v.                             :
                                           :
Kevin J. Spano, <u>et al</u>               :
                                           :          NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a)   Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.          ( )

(b)   Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.          ( )

(c)   Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.          ( )

(d)   Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.          ( )

(e)   Special Management -- Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)          ( X )

(f)   Standard Management – Cases that do not fall into any one of the other tracks.          ( )

March 31, 2005
**Date**

_____
**Attorney-at-law**
John P. Karoly, Jr., Esquire

_____
**Attorney for** Plaintiffs

(Civ. 660) 7/95

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: __1005 Main Street, Bethlehem, Northampton County, PA 18018__

Address of Defendant: __10 Church Street, Bethlehem, Northampton County, PA__

Place of Accident, Incident or Transaction: __1005 Main Street, Bethlehem, Northampton County, PA__

*(Use Reverse Side For Additional Space)*

Does this case involve multidistrict litigation possibilities?  Yes ☐  No ☒

*RELATED CASE, IF ANY:*

Case Number: _____  Judge _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

   Yes ☐  No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

   Yes ☐  No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?

   Yes ☐  No ☐

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, __John P. Karoly, Jr., Esq.__, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: __March 31, 2005__

Attorney-at-Law __John P. Karoly, Jr., Esquire__    Attorney I.D.# __22224__

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __March 31, 2005__

Attorney-at-Law __John P. Karoly, Jr., Esq.__    Attorney I.D.# __22224__

CIV. 609 (9/99)

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH A. JUNE, SR., LINDA JUNE, | : | |
| TARA RICHIE, JOSEPH A. JUNE, JR., | : | |
| KEVIN RICHIE, JAYDEN JUNE, A MINOR | : | |
| CHILD BY HIS PARENTS PLAINTIFFS JOSEPH | : | |
| A. JUNE, JR., AND ALICIA VASQUEZ, ALICIA | : | |
| VASQUEZ, ERIC JONES, AND MATT SANTIAGO | : | |
| Plaintiffs | : | |
| | : | |
| *v.* | : | |
| | : | No. |
| KEVIN J. SPANO, *individually* | : | |
| SCOTT LEPARE, *individually* | : | |
| FABIAN MARTINEZ, *individually* | : | |
| FRANCIS DONCHEZ, *individually* | : | |
| WILLIAM DOSEDLO, *individually* | : | |
| JOHN DOE BRAZINSKI *individually* | : | |
| JOHN DOE VASVARI, *individually* | : | |
| JOHN DOE ALESTAS, *individually* | : | |
| THE CITY OF BETHLEHEM | : | |
| THE TOWNSHIP OF BETHLEHEM, | : | |
| *THE NORTHAMPTON COUNTY DRUG* | : | |
| *TASK FORCE,* | : | |
| *AND* | : | |
| *THE COUNTY OF NORTHAMPTON* | : | |
| *Defendants* | : | |

## COMPLAINT

AND NOW COME the Plaintiffs above-captioned, by and through their

undersigned legal counsel of record, John P. Karoly, Jr., Esquire of KAROLY LAW

OFFICES, P.C., and, by way of Complaint against the above-named Defendants upon

a cause or causes of action, do hereby aver and state as follows:

## I.    JURISDICTION AND VENUE

1.    This action is instituted under the United States Constitution, particularly

under the provisions of the First, Fourth, Fifth and Fourteenth Amendments, and under federal law, particularly the Civil Rights Act of 1871, hereinafter sometimes referred to as the "Act", as amended, 42 U.S.C. Sections 1983, 1985 and 1988.

2.      This Court has jurisdiction in this matter pursuant to 28 U.S.C. §1331, §1343 (3), §1343 (4) and §1367, regarding the principles of pendent and supplemental jurisdiction over related state law claims.

3.      Venue in the Eastern District is properly laid pursuant to 28 U.S.C. §1391, in so far as the following alleged unlawful conduct complained of in this Complaint, which forms the factual and legal basis of the claims of the Plaintiffs, arose within the geographical limits of this District.

## II.    PARTIES

4.      Plaintiff Joseph A. June, Sr. is an adult sui juris individual, currently residing at 1005 Main Street, Bethlehem, Pennsylvania 18018, and is married to Plaintiff Linda June.

5.      Plaintiff Linda June is an adult sui juris individual, currently residing at 1005 Main Street, Bethlehem, Pennsylvania 18018.

6.      Plaintiff Tara Richie is an adult sui juris individual who at all times pertinent to this complaint was residing at 1005 Main Street, Bethlehem , Pennsylvania

18018.

7.  Plaintiff Joseph A. June, Jr., is an adult  sui juris individual who at all times pertinent to this complaint was  residing at 1005 Main Street, Bethlehem , Pennsylvania 18018.

8.  Plaintiff Kevin Richie is an adult sui juris individual who at all times pertinent to this complaint was residing at 1005 Main Street, Bethlehem , Pennsylvania 18018.

9.  Plaintiff Jayden June is a minor child, the issue of Plaintiff Joseph A. June, Jr., and Plaintiff Alicia Vasquez, who at all times pertinent to this complaint was present at 1005 Main Street, Bethlehem , Pennsylvania 18018.

10. Plaintiff Alicia Vasquez is an adult  sui juris individual who at all times pertinent to this complaint was present at 1005 Main Street, Bethlehem, Pennsylvania 18018

11. Plaintiff Eric Jones is an adult  sui juris individual who at all times pertinent to this complaint was present at 1005 Main Street, Bethlehem, Pennsylvania 18018

12. Plaintiff Matt Santiago is an adult  sui juris individual who at all times pertinent to this complaint was present at 1005 Main Street, Bethlehem, Pennsylvania 18018.

13. Defendant Kevin J. Spano (hereinafter sometimes referred to as "Spano"), upon information and belief, is an adult sui juris individual who is currently serving in his capacity as a sworn officer in the City of Bethlehem Police Department, and a member of its Special Operations Unit and is entrusted with the power to enforce laws of this Commonwealth, and the City of Bethlehem. Defendant Spano is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and  authority as an investigator, under color or title of state or municipal public law or ordinance and supervised or controlled one or more of the other Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions, or acted independently.

14. Defendant Scott Lepare, (hereinafter sometimes referred to as "Lepare"), upon information and belief, is an adult sui juris individual, who is currently serving in his capacity as a sworn police officer in the Police Department of the Defendant Township of Bethlehem, and is entrusted with the power to enforce laws of this Commonwealth, and the Township of Bethlehem. Defendant Lepare is entrusted to protect the Constitutional rights of those he encounters and  all times relevant hereto was acting within the scope of his duties and

*4*

authority, as an investigator under color or title of state or municipal public law or ordinance and supervised or controlled one or more of the other Defendants herein in their conduct or actions, or acted in concert with them in the performance of their conduct or actions, or acted independently.

15.    Defendant Fabian Martinez, (hereinafter sometimes referred to as "Martinez"), upon information and belief, is an adult sui juris individual, who is currently serving in his capacity as a sworn officer in the City of Bethlehem Police Department,  and is entrusted with the power to enforce the laws of this Commonwealth, and the City of Bethlehem. Defendant Martinez is entrusted to protect the Constitutional rights of those he encounters and  all times relevant hereto was acting within the scope of his duties and authority, as an investigator under color or title of state or municipal public law or ordinance and supervised or controlled one or more of the other Defendants herein in their conduct or actions, or acted in concert with them in the performance of their conduct or actions, or acted independently.

16.    Defendant William Dosedlo, (hereinafter sometimes referred to as "Dosedlo"), upon information and belief, is an adult sui juris individual, who is currently serving in his capacity as a sworn officer in the City of Bethlehem Police Department,  and is entrusted with the power to enforce the laws of this

Commonwealth , and the City of Bethlehem. Defendant Martinez is entrusted to protect the Constitutional rights of those he encounters and all times relevant hereto was acting within the scope of his duties and authority, as an investigator under color or title of state or municipal public law or ordinance and supervised or controlled one or more of the other Defendants herein in their conduct or actions, or acted in concert with them in the performance of their conduct or actions, or acted independently.

17. Defendant John Doe Vasvari (hereinafter sometimes referred to as "Vasvari"), upon information and belief, is an adult sui juris individual who is currently serving in his capacity as a sworn officer in the City of Bethlehem Police Department, and is entrusted with the power to enforce laws of this Commonwealth, and the City of Bethlehem. Defendant Vasvari is responsible for criminal investigation and he is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state or municipal public law or ordinance and supervised or controlled one or more of the other Defendants herein in their conduct or actions, or acted in concert with them in the performance of their conduct or actions, or acted independently.

18. Defendant John Doe Brazinski (hereinafter sometimes referred to as

"Brazinski"), upon information and belief, is an adult <u>sui juris</u> individual who is currently serving in his capacity as a sworn officer in the City of Bethlehem Police Department, and is entrusted with the power to enforce laws of this Commonwealth, and the City of Bethlehem. Defendant Brazinski is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state or municipal public law or ordinance and supervised or controlled one or more of the other Defendants herein in their conduct or actions, or acted in concert with them in the performance of their conduct or actions, or acted independently.

19. Defendant Francis Donchez (hereinafter referred to as "Donchez"), upon information and belief, is an adult <u>sui juris</u> individual who is currently serving in his capacity as a sworn superior officer in the City of Bethlehem Police Department, and is entrusted with the power to enforce laws of this Commonwealth, and the City of Bethlehem. Defendant Donchez is entrusted to supervise and implement policy, to address manpower and facilitate the assignment of police personnel to assignments as hereafter identified, to develop policy such as use of force, and treatment of those who are in police custody, and to protect the Constitutional rights of those he encounters and at

7

all times relevant hereto was acting within the scope of his duties and authority, under color or title of state or municipal public law or ordinance and supervised or controlled one or more of the other Defendants herein in their conduct or actions, or acted in concert with them in the performance of their conduct or actions, or acted independently.

20.  Defendant City of Bethlehem  (hereinafter referred to as the "City") is a governmental entity within the Commonwealth of Pennsylvania empowered to establish, regulate, and control its Police Department for enforcement of laws within its jurisdiction and for the purpose of protecting and preserving the persons and property within the geographical and legal jurisdiction of the Defendant City.

21.  Defendant Township of Bethlehem (hereinafter referred to as the "Township") is a governmental entity  within the Commonwealth of Pennsylvania empowered to establish, regulate, and control its Police Department for enforcement of laws within its jurisdiction and for the purpose of protecting and preserving the persons and property within the geographical and legal jurisdiction of the Defendant Township.

22.  Defendant Northampton County Drug Task Force (hereinafter referred to as "Task Force") is a subordinate unit or instrumentally of Northampton County

*8*

empowered to establish, regulate, and administer its members for the enforcement of state and local laws and ordinances within its jurisdiction for the purpose of protecting and preserving the rights of persons and property within the geographical and legal jurisdiction of Northampton County. It is believed, and therefore averred that the individual Defendants herein were members of, and assigned to, this Task Force and/or the Special Operations Unit of the City of Bethlehem Police Department.

23.   Defendant County of Northampton (hereinafter referred to as "County") is a municipal or governmental entity within the Commonwealth of Pennsylvania empowered to establish, regulate, and administer its prison and law enforcement system, including the Defendant Task Force, for the enforcement of laws within its jurisdiction for the purpose of protecting and preserving rights of the persons and properly within its geographical and legal jurisdiction.

## III.   **FACTUAL ALLEGATIONS**

24.   On April 1, 2003, Defendant Fabian Martinez and other members of the Special Operations Unit of the Defendant City of Bethlehem Police Department, believed to include Defendant Vasvari, were conducting surveillance at 1005 Main Street in Bethlehem for the purpose of observing

Patrick Richie, the son the Plaintiff Linda June and stepson of Plaintiff Joseph A. June, Sr., and his involvement in alleged illegal drug transactions.

25. This surveillance was to begin about 6:00 p.m. on April 1, 2003, and about 6:42 p.m., a confidential informant, working in concert with the Defendants herein, received a telephone call on his cell phone from Patrick Richie. The confidential informant and Patrick Richie allegedly agreed to complete a drug transaction for half a pound of marijuana for $1,900.00

26. The confidential informant was to meet Patrick Richie at Northampton County Community College.

27. At about 6:50 p.m. on April 1, 2003, Defendants on surveillance observed Patrick Richie leave 1005 Main Street, where they knew he lived in the basement, and get into a black in color Acura automobile.

28. The Defendants conducting the surveillance followed Patrick Richie for a considerable distance through the City of Bethlehem, and onto the Northampton County Community College campus.

29. Once on the campus, Patrick Richie met with the confidential informant and an undercover police officer believed to be one of the Defendants and allegedly turned over to them an amount of marijuana and allegedly received $1,900.00 from the officers.

*10*

30.   The Defendants then made a pre-determined signal to indicate that the alleged transaction was completed.

31.   Defendants and other officers in both marked and unmarked police vehicles then pulled over Patrick Richie in the aforementioned Acura and arrested him.

32.   A search of Patrick Richie allegedly found $1,900.00 in currency on his person.

33.   Patrick Richie was then processed by the Defendants, including but not limited to, Defendant Lepare.

34.   Patrick Richie reiterated, during processing, to the Defendants that he lived in the basement at 1005 Main Street in Bethlehem.

35.   Without making any attempt to apply for a search warrant or even beginning the process of preparing written application documents for a search warrant, Defendant Spano, along with other Defendants from the Defendant City Police Department and Defendant Township Police Department and Defendant Task Force, went to the residence at 1005 Main Street.

36.   Defendants arrived at 1005 Main Street about 8:00 p.m. on April 1, 2003.

37.   Despite not having a search warrant or having even started the process for a search warrant concerning the premises, the Defendants entered the residence at 1005 Main Street, without knocking on the door, ringing the doorbell, or in

any other way notifying the occupants of the premises that the police were present and what their purpose was.

38.    The Plaintiffs, except for Plaintiff Linda June and Plaintiff Tara Richie, were present on the premises at that time.

39.    At the subsequent preliminary hearing, Defendant Martinez testified under oath that the foregoing method and procedure of entry without a search warrant was "a common practice."

40.    Defendants have asserted they entered as they did to "secure" the premises, but have never delineated any exigent circumstances.

41.    Defendant Spano apparently did not enter the premises with the other Defendants, but stayed on the perimeter.

42.    As the individual Defendants entered the hallway inside the front door of the premises, they told Plaintiff Eric Jones to quiet the dogs and get the canines out of the way.

43.    Defendants then demanded to know who and where the owner of the house was.  When Plaintiff Jones, Plaintiff Joseph A. June, Jr. and Plaintiff Santiago turned to locate Plaintiff Joseph A. June, Sr., elsewhere in the house all the Defendants pushed into the livingroom area and began to spread out throughout the house.

*12*

44.   As the Defendants entered the first floor of the house, Plaintiffs Kevin Richie and Joseph A. June, Sr., were in their respective bedrooms on the second floor of the house.

45.   When they heard the noise of the Defendants in the house, they both went into the hallway on the second floor and encountered one of the Defendants, a uniformed Bethlehem Police officer (who may have been Defendant Brazinski), in the hallway

46.   Plaintiffs Kevin Richie and Joseph June, Sr., were told to go to the first floor downstairs, but were not told what the Defendants were doing in the house.

47.   Plaintiff Joseph A. June, Sr., repeated his question about what the police were doing in his house when he got to the livingroom, but was only told he would soon be getting a telephone call from his son about what was happening.

48.   Plaintiff Joseph June, Sr., specifically asked if the Defendants had a search warrant and whether or not the Defendants needed a search warrant to enter the house.

49.   He was not given a specific answer to either inquiry but was simply told to wait in the livingroom and not to leave the livingroom, while the process of obtaining a warrant was accomplished.

50.   Two of the Defendants went into the basement of the home after they entered

the house and chased Plaintiff Alicia Vasquez, with the terrified two-year-old Plaintiff Jayden June in her arms, up to the first floor and into the livingroom.

51. Defendants, when the Plaintiffs had all been herded into the living room, demanded to know who else lived in the house.

52. Plaintiff Joseph A. June, Sr., responded that his wife, Plaintiff Linda June, and her daughter, Tara Richie, resided on the premises but were out at the time bowling.

53. The Defendants did not identify themselves, and two or three of the Defendants were in plain clothes, with no police emblems, patches, or other indicia of law enforcement authority on the garments they were wearing. The uniformed Defendants obviously had their firearms on their person.

54. Defendant Spano left the premises about 8:15 p.m to start the process of preparing the paperwork to apply for a search warrant for the house at 1005 Main Street from the night duty district justice.

55. Before departing the premises in one of the five unmarked cars the Defendants arrived in, Defendant Spano spoke with Defendant Brazinski, who informed Spano that he had allegedly seen rolling papers in plain view in the bedroom in the attic of the house.

56. Defendant Spano, in filling out his application for the search warrant for 1005

*14*

Main Street, included Defendant Brazinski's comments in the application as part of the basis submitted to establish probable cause for the issuance of the warrant.

57. After the departure of Defendant Spano, the other Defendants who remained at 1005 Main Street permitted Plaintiff Eric Jones and Plaintiff Matt Santiago to depart, after questioning them about whether or not they lived in the house.

58. Plaintiffs Jones and Santiago then left the house without being personally searched before departure.

59. Plaintiffs Linda June and Tara Richie arrived home at 1005 Main Street about 9:00 p.m. after a night of bowling and were immediately confined to the livingroom with the other remaining Plaintiffs, who had now been confined to that room for about one hour.

60. During the next two or two and a half hours, none of the Plaintiffs then on the premises were allowed to move from the livingroom except to go to the bathroom, which movement required the accompaniment of one of the Defendants to stand guard outside the bathroom door.

61. After about an hour of this confinement, Plaintiff Tara Richie was tired of it, and asked the Defendants if she could leave.

62. Defendants answered that she could leave because she was not on the premises

*15*

when the Defendants arrived, but only if she signed a paper indicating which bedroom on the second floor was hers.

63.  Without being given any Miranda warnings, Plaintiff Tara Richie signed such a document and left the house sometime after 10:00 p.m., but none of the other Plaintiffs were permitted to leave the livingroom, especially to go to any of the bedrooms on any floor.

64.  About 11:00 p.m. (according to the search warrant) on April 1, 2003, District Justice Michael Khoury signed the search warrant presented to him at that time by Defendant Spano, which consisted of mostly pre-printed boilerplate statements.

65.  About that same time, another police officer, believed to be Defendant Vasvari, returned to 1005 Main Street with gloves and other equipment to assist in accomplishing a search of the house.

66.  Without waiting for Defendant Spano to arrive at 1005 Main Street with the search warrant, the Defendants once again "fanned out" throughout the house to search it from top to bottom, without having seen the warrant and not knowing what it said and what it authorized them to do and search for on the premises.

67.  About 11:20 p.m. on April 1, 2003, Defendant Spano arrived back at 1005

*16*

Main Street with the signed search warrant in his possession.

68. During this second search of the premises, the Defendants allegedly found drug paraphernalia and some marijuana reside in the attic bedroom and some drug paraphernalia in a second floor bedroom.

69. During the process of conducting the search, the Defendants tore up carpeting and ripped it, removed dresser drawers and threw them around the room, and otherwise "trashed" the rooms that were searched at this time, damaging the personal property of the Plaintiffs without cause or justification.

70. The Plaintiffs believe, and therefore aver, that during this "second search" the Defendants did not inspect the livingroom, kitchen, or master bedroom belonging to Plaintiffs Joseph A. June, Sr., and Linda June, although Plaintiffs had not been allowed in those rooms after 8:00 p.m.

71. After the completion of the search, the Defendants removed Plaintiff Joseph A. June, Jr., from the premises, took him to police station, and charged him with possession of drug paraphernalia and of a small amount of marijuana residue, based on the items allegedly found in the attic bedroom.

72. Plaintiff Tara Richie was later charged with possession of drug paraphernalia, based on the items allegedly found in a second floor bedroom.

73. At a preliminary hearing on May 20, 2003, before District Justice Michael

*17*

Khoury, the criminal charges against Tara Richie were dismissed due to lack of sufficient evidence to even establish a prima facie case.

74. The individual Defendants heretofore named and identified, in their individual capacities and as agents, employees, representatives, officials, and public servants of the Defendant City, Defendant Township, Defendant County, and/or Defendant Task Force, knew, or should have known, that their individual and collective actions, policies, practices, procedures, customs, daily usage, and conduct, as herein more fully described and delineated, within their individual and collective spheres of responsibility, would violate the constitutional rights of the individual Plaintiffs, regardless of whether or not their individual or collective actions or conduct were undertaken with malicious intent or demonstrable bad faith in regard to the possibility of the deprivation of Constitutional rights or other injury to the individual Plaintiffs.

75. By virtue of their official positions, some or all the Defendants were supervisory officials in or over members of the Bethlehem Police Department, Bethlehem Township Police Department or Defendant Task Force, and had the power and opportunity to exercise direct control over the police officers of said departments, including the Defendant Police Officers herein.

76. Said Defendants, acting intentionally, exercised their authority in concert with

*18*

their subordinates with the aim of injuring the Plaintiffs in the manner and by the means of act(s) or omission(s) more fully set out herein.

77. Said Defendants had knowledge of their subordinates' activities, gave their consent and frequently actually directed and supervised, as here, the performance of the wrongful acts.

78. Said Defendants also condoned, encouraged and otherwise perpetuated their subordinates wrongful acts and unconstitutional acts in the instant case by intentionally, inter alia:

a.   not requiring subordinates such as the instant Defendants to render contemporaneous reports concerning their actions and the alleged actions of the Plaintiffs;

b.   permitting subordinates the time and opportunity to freely confer with one another in order to fabricate or configure events and actions calculated to justify their improper conduct prior to the preparation and filing of appropriate police reports;

c.   by failing to initiate a prompt, proper, impartial and complete investigation;

d.   by failing to institute disciplinary proceedings against the Defendants or one or more of them where such proceedings were clearly warranted;

e.     by failing to properly select said subordinates and thereafter by failing to provide them with appropriate training and supervision;

f.     by failing to ensure measures which could anticipate and prevent or limit the constitutional violations invoked by said subordinates.

<u>**COUNT I**</u>
<u>**VIOLATION OF 42 U.S.C. SECTION 1983**</u>

**All Plaintiffs**
**v.**
**ALL DEFENDANTS**

79.  Plaintiffs hereby incorporate by reference all the allegations contained in paragraphs 1 through 78 above as though the same had been set forth fully at length herein.

80.  The actions of all the Defendants, collectively and individually in planning, conducting, and carrying out the search, detention, arrest, incarceration and imprisonment of the Plaintiffs' persons and property and the subsequent actions by the individual Defendants, in their roles as members of the Defendant Task Force or of the Police Departments of Defendant City and Defendant Township, or acting independently, on April 1, 2003 and thereafter as hereinbefore more fully set forth, deprived the Plaintiffs of their constitutional rights as guaranteed by the First, Fourth, Fifth and Eighth

Amendments to the Constitution, Section 8 of the Pennsylvania Constitution, and 42 U.S.C. Section 1983 in, <u>inter alia</u>, the following manners:

(a)   In the unlawful searching and entering of the Plaintiffs' residence;

(b)   In the unreasonable use of police power and authority or abuse of criminal process in the said searching and entering and the conduct of the illegal search;

(c)   In the unlawful arrest and detention and imprisonment of the Plaintiffs on April 1, 2003, which was designed or calculated to punish the Plaintiffs;

(d)   In the intentional or negligent infliction of emotional distress upon the Plaintiffs, designed or calculated to punish the Plaintiffs;

(e)   In the development, implementation, and carrying out of a policy, practice or procedure designed to allow the unreasonable use of police power and authority, unlawful searches and seizures, abuse of criminal process on citizens, and deprivation of constitutional rights of citizens, such as the Plaintiffs;

(f)   In the development, implementation, and the carrying out of a policy which posed a threat to the law abiding citizens of the Defendant City, Defendant Township, and Defendant County, in that the assignment of

*21*

certain personnel would result in the likelihood of serious injury to citizens and their individual rights;

**(g)**     In developing, implementing, and carrying out a policy, practice, or procedure or custom which made no reasonable or proper provision for application of law to the premises to be searched and to provide protection to the citizens of the Defendant City, Defendant Township and Defendant County to be safe and secure in their persons and property;

**(h)**     in condoning and conducting what amounted to an unreasonable arrest, search and seizure in violation of the Constitutional rights of the Plaintiffs;

**(i)**     in developing, implementing, and carrying out a policy practice, procedure, or custom which amounted to cruel and unusual punishment and a deprivation of life and liberty actionable under 42 U.S.C. Section 1983;

**(j)**     in developing, implementing, and carrying out a policy, practice, procedure, or custom which made no reasonable or proper provision for the preservation of rights to personal property, such as that of the Plaintiffs, when such property was placed in the control of one or more

of Defendants;

**(k)**    in failing to train all the Defendants in recognition of proper methods and procedures to be used in conducting lawful searches and arrests;

**(l)**    in failing to properly train, supervise, monitor and control the actions of all the Defendants so that proper police procedure could be accomplished safely and without the use of abuse of criminal process, false arrest, false imprisonment, and malicious prosecution of persons situated similarly to Plaintiffs;

**(m)**    in failing to properly develop, implement and carry out a policy, practice, or procedure or custom which conformed with the Constitutional requirements in search, seizure, arrest, imprisonment, and prosecution of persons such as the Plaintiffs; and

**(n)**    in demonstrating callous and deliberate indifference in failing to oversee, monitor, control, curtail, or restrain the actions of the individual Defendants in carrying out such search, seizure, arrest, imprisonment, and prosecution operations when all Defendants knew, or should have known, that the likelihood of property rights violations   and psychological injury, and the deprivation of the constitutional right of citizens such as the Plaintiff was substantial.

*23*

(o)  in demonstrating callous and deliberate indifference to the prior policy, practice, custom, procedure, and precedent established by the Defendant City and its Special Operation Unit, in the tactics used to execute search warrants, most particularly in drug cases, which resulted in clear constitutional violations of the rights of citizens, as amply demonstrated by the shooting to death of John Hirko, Jr., in April 1997 by the members of the Special Operations Unit during the conducting of a raid on Christian Street in Bethlehem to serve a search warrant, and by the incident involving Beatrice Lemar in the summer of 1997 with the Special Operations Unit.

(p)  in failing to alter, amend, change, or review he actions and conduct of the members of the Special Operations Unit following the John Hirko, Jr., and Beatrice Lemar incidents to ensure compliance on future operations with constitutional requirements and mandates in regard to the service and execution of search warrants.

81.  As a direct and proximate result of the aforesaid actions and omissions of all Defendants , the Plaintiffs have suffered the following injuries and losses and is entitled to the following damages:

(a)  loss of the use, benefit and enjoyment of life and personal freedom of

movement and association;

**(b)**    physical and mental pain and suffering and anguish, and embarrassment and  humiliation;

**(c)**    loss of valuable and inalienable rights to be free from unlawful search, free from illegal imprisonment, free from loss of freedom of association, free from false arrest and malicious prosecution, as well as free from loss of personal and familial privacy;

**(d)**    loss of income and future earning capacity;

**(e)**    loss of reputation and damage to personal property;

**(f)**    punitive damages which are justified by the outlandish and outrageous conduct, actions, and omissions of one or more of the Defendants as aforesaid;

**(g)**    attorney's fees and costs to defend against the criminal action; and

**(h)**    medical expenses for care and treatment.

**WHEREFORE,** Plaintiffs, jointly and severally, respectfully request that this Honorable Court award judgement in Plaintiffs' favor, jointly and severally,  and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration, including costs and attorney fees incurred in this action,  in the District Court for the Eastern District

of Pennsylvania.

## COUNT II
## VIOLATION OF 42 U.S.C. SECTION 1985
## INVASION OF PRIVACY

**All Plaintiffs**
v.
**ALL DEFENDANTS**

82. Plaintiffs hereby incorporate by reference the preceding paragraphs as if set forth et extenso.

83. The Defendants did intentionally intrude, physically or otherwise, upon the geospatial and psychic solitude or seclusion of the Plaintiffs or their private affairs or concerns, knowing that such intrusion and their actions thereafter would be highly offensive and traumatizing to a reasonable person.

84. The individual Defendants, during the time set out in this Complaint, were officers, officials, employees, representatives or agents of the Defendant City, Defendant Township, the Defendant County or the Defendant Task Force and/or the Police Departments, and were acting under color or title of the laws and/or ordinances of the Defendant City, Defendant Township, Defendant County or of the Commonwealth of Pennsylvania.

85. During the years before 2003, the Defendants, or one or more of them knew,

*26*

or by the exercise of ordinary care, should have known that Defendants were committing actions and conduct illegally against persons similarly situated as the Plaintiffs such as that described in this Complaint hereinbefore.

86.   Notwithstanding that, under the Constitution of The United States and the laws of the Commonwealth of Pennsylvania, the Defendants were empowered and duly authorized to prevent or assist in preventing the denial of equal protection of the provisions of the Constitution of the United States and Federal Laws and the laws of the Commonwealth of Pennsylvania to the Plaintiffs, the Defendants, acting in concert, or acting independently, wrongfully allowed the before described actions and conduct to occur in violation of the said equal rights of the Plaintiffs.

87.   Notwithstanding the provisions of state and federal laws, which empowered the Defendants to secure to the Plaintiffs rights, equal privileges, and immunities, which Defendants could have secured to the Plaintiffs by the exercise of reasonable diligence, the Defendants, acting in concert, wrongfully neglected to prevent or preclude or aided in the preventing or precluding of the commission of such wrongs against the Plaintiff.

88.   The conspiracy of the Defendants, acting within the scope or parameters of their official duties or acting independently, who willfully acted, or failed to

act, deprived the Plaintiffs of their right to peacefully and lawfully reside without being subject to unreasonable searches and/or unlawful detention, false arrest and malicious prosecution and abuse of criminal process.

89.     The right to be free from unlawful search, arrest, or imprisonment and malicious prosecution is protectable against the Defendants as individual conspirators under §1985.

90.     The right to be free from unlawful conduct and actions is protectable against conspiracies under §1985.

91.     The discrimination which the Plaintiffs suffered and / or were intended to suffer was predicated upon invidious discrimination against Plaintiffs because of the Defendants' refusal to accept the constitutional mandate that a person is innocent until proven guilty, and that a person need not relinquish their rights nor cooperate with police authorities because of association with an alleged drug offender.

92.     The Defendants (and in any event, more than one of them) formed a conspiracy for the specific purpose of depriving Plaintiffs of their civil rights, and committed the acts or actions delineated hereinbefore in furtherance of that conspiracy.

93.     As a direct and proximate result of this invasion of the Plaintiffs' privacy they

*28*

suffered the following injuries and losses and is entitled to the following damages:

**(a)**   loss of the use, benefit and enjoyment of life and personal freedom of movement and association;

**(b)**   physical and mental pain and suffering and anguish, and embarrassment and humiliation;

**(c)**   loss of valuable and inalienable rights to be free from unlawful search, free from illegal imprisonment, and free from loss of freedom of association, free from false arrest and malicious prosecution, as well as free from loss of personal and familial privacy;

**(d)**   loss of income and future earning capacity;

**(e)**   loss of reputation and damage to personal property;

**(f)**   punitive damages which are justified by the outlandish and outrageous conduct, actions, and omissions of one or more of the Defendants as aforesaid;

**(g)**   attorney's fees and costs incurred in defending against the criminal prosecution; and

**(h)**   medical expenses for care and treatment;

**WHEREFORE,** Plaintiffs, jointly and severally, respectfully request that this

Honorable Court award judgement in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration, including costs and attorney fees incurred in this action, in the District Court for the Eastern District of Pennsylvania.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### All Plaintiffs
### v.
### ALL INDIVIDUAL DEFENDANTS

94.     Plaintiffs hereby incorporate by reference the preceding paragraphs as if set forth et extenso.

95.     The aforesaid extreme and outrageous conduct, acts, or omissions of the Defendants, committed in the scope of their employment, or acting independently, were calculated, designed, and intended by the Defendants to intentionally inflict deliberate emotional distress, psychological trauma, psychic pain and suffering, and cruel and unusual punishment upon the Plaintiffs and to instill in their minds an immediate and permanent sense of fear and trepidation, and said conduct, acts, or omissions surpass all bounds of decency universally recognized in a civilized society.

96.     As a direct and proximate result and consequence of the aforesaid conduct,

acts, or omissions of the Defendants, which constitute extremely outrageous conduct, the Plaintiffs have suffered, are suffering, and will continue to suffer for an indefinite time into the future the following:

**(a)**    emotional and psychological distress and trauma;

**(b)**    mental anguish;

**(c)**    psychic pain and suffering;

**(d)**    severe fright, horror, and grief;

**(e)**    shame, humiliation, and embarrassment;

**(f)**    severe anger, chagrin, disappointment, and worry;

**(g)**    justified punitive damages because of the outlandish and outrageous conduct, actions, and omissions of one or more of the Defendants; and

(h)    the need to expend funds for medical care and treatment.

**WHEREFORE,** Plaintiffs, respectfully request that this Honorable Court award judgement in Plaintiffs' favor, jointly and severally, and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration, including costs and attorney fees incurred in this action, in the District Court for the Eastern District of Pennsylvania.

## COUNT IV
## NEGLIGENCE AND NEGLIGENT INFLICTION
## OF EMOTIONAL DISTRESS

### All Plaintiffs
### v.
### ALL DEFENDANTS

97.   Plaintiffs incorporate by reference the preceding paragraphs as if set forth et

extenso.

98.   Plaintiffs have suffered, are suffering and will continue to suffer for an

indefinite time in the future, and such suffering and injuries were the direct and

proximate result of the careless, reckless, and negligent conduct, acts or

omissions, individually or in concert as delineated hereinbefore, by the

Defendants, who breached their duty to the Plaintiffs, in any or all of the

following respects:

a.     in the unreasonable use of police power and authority;

b.     in the unreasonable entry into a private home;

c.     in developing implementing, and carrying out a policy, practice or

procedure designed to allow the unreasonable use of police power and

authority likely to result in constitutional violations or destruction of

property;

d.     in developing, implementing and carrying out a policy, practice,

*32*

procedure or custom which displayed careless and negligent disregard for the Constitutional rights of persons within the jurisdiction of the Defendants;

e.  in developing, implementing and carrying out a policy, practice, procedure, or custom which negligently posed a threat of injury to persons such a Plaintiffs.

f.  in developing, implementing and carrying out a policy, practice, procedure, or custom which could negligently result in the unreasonable use of police power and authority in executing a search warrant, when such a result was not justified;

g.  in developing, implementing and carrying out a policy, practice, procedure, or custom which negligently made no reasonable provision for the protection and well-being of persons such as the Plaintiffs, toward whom that policy was directed;

h.  in developing, implementing and carrying out a policy, practice, procedure, or custom in which the Defendants were negligently trained in how to commence the application for an execution of a search warrant or thereafter deal with resulting circumstances;

i.  in developing, implementing and carrying out a policy, practice,

*33*

procedure, or custom which negligently created the possibility of an unreasonable search and seizure in violation of the Constitutional rights of the Plaintiff;

j.    in developing, implementing, and carrying out a policy, practice, procedure, or custom which negligently amounted to cruel and unusual punishment and a deprivation of life and liberty actionable under 42 U.S.C. Section 1983;

k.    in developing, implementing, and carrying out a policy, practice, procedure, or custom which negligently made no reasonable provision for the proper handling of persons such as the Plaintiffs, when they were placed in harm's way, in their own residence by the actions of one or more of the Defendants;

l.    in developing, implementing, and carrying out a policy, practice, procedure, or custom which negligently made no reasonable provision for the preservation of personal property, such as that of the Plaintiffs, when such property was placed in jeopardy by the ultra-hazardous activities carried out by one or more of the Defendants;

m.    in negligently training, supervising, overseeing, and monitoring the actions of all the Defendants so that the aforesaid policy, practice,

*34*

procedure, or custom could be accomplished safely and without the unreasonable use of police power and authority or unnecessary risk of harm to persons or property;

n.   in negligently developing, implementing and carrying our a policy, practice or procedure or custom which circumvented the Constitutional requirements in drug cases which mandates the use of "knock and announce" procedure.

o.   in negligently retaining personnel as policemen who were not properly trained, supervised, equipped, or motivated to perform their public duties in the preservation of property;

p.   in negligently demonstrating extreme indifference to the value of personal property and personal civil rights;

q.   in the negligent hiring and retention of personnel; and

99.   As a direct and proximate result and consequence of the aforesaid conduct, acts, or omissions of the Defendants, which constitute extremely outrageous conduct, the Plaintiffs have suffered, are suffering, and will continue to suffer for an indefinite time into the future the following:

(a)   emotional and psychological distress and trauma;

(b)   mental anguish;

(c)     psychic pain and suffering;

(d)     severe fright, horror, and grief;

(e)     shame, humiliation, and embarrassment;

(f)     severe anger, chagrin, disappointment, and worry;

(g)     justified punitive damages because of the outlandish and outrageous conduct, actions, and omissions of one or more of the Defendants; and

(h)     the need to expend funds for medical care and treatment.

**WHEREFORE,** Plaintiffs, respectfully request that this Honorable Court award judgement in Plaintiffs' favor, jointly and severally, and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration, including costs and attorney fees incurred in this action, in the District Court for the Eastern District of Pennsylvania.

## COUNT V
## FALSE ARREST

### All Plaintiffs
### v.
### ALL DEFENDANTS

100.   Plaintiffs incorporate by reference the preceding paragraphs as if set forth et extenso.

101.   The actions and conduct of the Defendants as described hereinbefore

*36*

constitutes a false arrest because the arrest of the Plaintiffs on April 1, 2003, was accomplished without a legal search and without the Defendants having privilege to arrest, due to the fact that the arrest was accomplished based on an illegal entry and search, as previously set forth in this Complaint.

102. As a direct and proximate result of the aforesaid conduct, actions, and omissions of all Defendants, the Plaintiffs have suffered the following injuries and losses and are entitled to the following damages:

    **(a)**    loss of the use, benefit and enjoyment of life and personal freedom of movement and association;

    **(b)**    physical and mental pain and suffering and anguish, and embarrassment and humiliation;

    **(c)**    loss of valuable and inalienable rights to be free from unlawful search, free from illegal imprisonment and loss from loss of freedom of association, free from false arrest and malicious prosecution, as well as free from loss of personal and familial privacy;

    **(d)**    loss of income and future earning capacity;

    **(e)**    loss of reputation and damage to personal property;

    **(f)**    punitive damages which are justified by the outlandish and outrageous conduct, actions, and omissions of one or more of the Defendants as

aforesaid;

**(g)**     attorney's fees and costs to defense against the criminal action;

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court award judgement in Plaintiffs' favor, jointly and severally, and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration, including costs and attorney fees incurred in this action, in the District Court for the Eastern District of Pennsylvania.

**COUNT VI**
**FALSE IMPRISONMENT**

**All Plaintiffs**
**v.**
**ALL DEFENDANTS**

103.   Plaintiffs incorporate by reference the preceding paragraphs as if set forth et extenso.

104.   The actions and conduct of the Defendants, as described hereinbefore, constitute a false imprisonment of the Plaintiff on April 1, 2003, and thereafter based on a search known by the Defendants to be unreasonable, improper, and illegal, thereby depriving the Defendants of the probable cause to believe that Plaintiffs had committed a crime for which they could be detained, arrested, imprisoned, and prosecuted successfully, which probable cause is necessary for

the Defendants to assert their official privilege to detain, arrest  and/or imprison the Plaintiff.

105.  The arrest or detention and imprisonment of the Plaintiffs, as previously set forth in this Complaint, was accomplished by the Defendants, not for a legitimate law enforcement purpose of convicting the Plaintiffs of a crime, but merely for the purpose of forcing or coercing "cooperation" in extending  the scope of their drug investigation and punishing the Plaintiffs for their association with an alleged drug offender.

106.  As a direct and proximate result of the aforesaid actions and omissions of all Defendants in developing, implementing, and carrying out the aforesaid plan, policy, or continuing course of conduct, the Plaintiffs have suffered the following injuries and losses and are entitled to the following damages:

(a)  loss of the use, benefit and enjoyment of life and personal freedom of movement and association;

(b)  physical and mental pain and suffering and anguish, and embarrassment and humiliation;

(c)  loss of valuable and inalienable rights to be free from unlawful search, free from illegal imprisonment and free from loss of freedom of association, free from false arrest and malicious prosecution, as well as

*39*

free from loss of personal and familial privacy;

**(d)**    loss of income and future earning capacity;

**(e)**    loss of reputation and damage to personal property;

**(f)**    punitive damages which are justified by the outlandish and outrageous conduct, actions, and omissions of one or more of the Defendants as aforesaid;

**(g)**    attorney's fees and costs to defend against the criminal action;

**(h)**    the need to expend funds for medical care and treatment.

**(i)**    emotional and psychological distress and trauma;

**(j)**    psychic pain and suffering;

**(k)**    severe fright, horror, and grief;

**(l)**    shame; and

**(m)**    severe anger, chagrin, disappointment, and worry.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court award judgement in Plaintiffs' favor, jointly and severally, and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration, in the District Court for the Eastern District of Pennsylvania.

## COUNT VII
## MALICIOUS PROSECUTION

### Plaintiff Tara Richie
### v.
### ALL DEFENDANTS

107.   Plaintiff incorporates by reference the preceding paragraphs as if set forth et extenso.

108.   The actions, conduct, and omissions of the Defendants, as described hereinbefore, constitute a malicious prosecution, because the criminal prosecution was initiated and continued by the Defendants for their own malicious purpose and without probable cause for the illegal search, detention, arrest, and prosecution.   The criminal proceeding finally terminated at the preliminary hearing in the favor of the Plaintiff, as the Defendants knew it would inevitably do from the beginning, throughout their continuous course of tortious conduct against the Plaintiff.

109.   Plaintiff believes, and therefore avers, that the entire course of conduct of the Defendants was pursued for their own malicious purposes, which was other than to bring an accused person to justice, and was designed or calculated to punish the Plaintiff.

110.   As a direct and proximate result of the aforesaid actions and omissions of all

*41*

Defendants in developing, implementing, and carrying out the aforesaid plan, policy, or continuing course of conduct, the Plaintiff has suffered the following injuries and losses and is entitled to the following damages:

**(a)**   loss of the use, benefit and enjoyment of life and personal freedom of movement and association;

**(b)**   physical and mental pain and suffering and anguish, and embarrassment and humiliation;

**(c)**   loss of valuable and inalienable rights to be free from unlawful search, free from illegal imprisonment and free from loss of freedom of association, free from false arrest and malicious prosecution as well as free from loss of personal and familial privacy;

**(d)**   loss of income and future earning capacity;

**(e)**   loss of reputation;

**(f)**   punitive damages which are justified by the outlandish and outrageous conduct, actions, and omissions of one or more of the Defendants as aforesaid.

**(g)**   attorney's fees and costs to defend against the criminal action;

**(h)**   emotional and psychological distress and trauma;

**(i)**   psychic pain and suffering;

*42*

**(j)**   severe fright, horror, and grief;

**(k)**   shame; and

**(l)**   severe anger, chagrin, disappointment, and worry.

**WHEREFORE,** Plaintiff respectfully request that this Honorable Court award judgement in Plaintiff's favor, and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the District Court for the Eastern District of Pennsylvania.

**COUNT VIII**
**ABUSE OF PROCESS**

**Plaintiff Tara Richie**
**v.**
**ALL DEFENDANTS**

111.   Plaintiff incorporates by reference the preceding paragraphs as if set forth et extenso.

112.   The actions, conduct, and omissions of the Defendants, as described hereinbefore, constitute an abuse of criminal process because of the false arrest, false imprisonment, and malicious prosecution of the Plaintiff by the Defendants and their continuing course of tortious conduct from April 1, 2003 until the preliminary hearing, which was calculated and designed by the Defendants, not for the lawful and legitimate purpose of bringing Plaintiff to

*43*

justice, but solely for their personal and malicious motives to utilize arrest and prosecution to coerce and force the Plaintiff to cooperate in their efforts to widen the scope of their drug investigation and to punish the Plaintiff.

113.  As a direct and proximate result of the aforesaid actions and omissions of all Defendants in developing, implementing, and carrying out the aforesaid policy, the Plaintiff has suffered the following injuries and losses and is entitled to the following damages:

(a)  loss of the use, benefit and enjoyment of life and personal freedom of movement and association;

(b)  physical and mental pain and suffering and anguish, and embarrassment and humiliation;

(c)  loss of valuable and inalienable rights to be free from unlawful search, free from illegal imprisonment and free from loss of freedom of association, free from false arrest and malicious prosecution, as well as free from loss of personal and familial privacy;

(d)  loss of income and future earning capacity;

(e)  loss of reputation and damage to personal property;

(f)  punitive damages which are justified by the outlandish and outrageous conduct, actions, and omissions of one or more of the Defendants as aforesaid;

**(g)**   attorney's fees and costs to defend against the criminal action;

**(h)**   emotional and psychological distress and trauma;

**(i)**   psychic pain and suffering;

**(j)**   severe fright, horror, and grief;

**(k)**   shame; and

**(l)**   severe anger, chagrin, disappointment, and worry.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgement in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration, including costs and attorney fees incurred in this action, in the District Court for the Eastern District of Pennsylvania.

In addition to the foregoing requests, the Plaintiffs also respectfully request that all portions of the foregoing civil cause of action be heard by a jury of their peers numbering at least twelve individuals at trial in this matter.

Respectfully submitted,
KAROLY LAW OFFICES

Date: March 29, 2005

John P. Karoly, Jr., Esquire
Attorney for Plaintiffs
I.D. No. 22224
1555 N. 18th Street
Allentown, PA  18104